UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LOUIE GENE HARRIS,

      Plaintiff,

      v.

MICHAEL KEANE, LYNETTE REDA,
BETHANY SOLEK, JUSTIN
CALDWELL, JAMES McMAHON,
JUDGE SUSAN EAGAN, TIMOTHY
GALLAGHER, ROBERT ROSS FOG
ESQ., CATHLEEN ROEMER, DEBRA
GIVENS, RITA RUFFIN, MICHAEL
MOORE, MEREDITH MOHUN,
HARMONY HEALY, ERIN L.
COPPING, JOELENE A. LAMPHIER,
MAUREEN DUGGAN, KATHY
HOCHUL, F.B.I. AGENT FALCOTTI,
CITY OF BUFFALO, OFFICE OF THE
ATTORNEY GENERAL (BUFFALO),
JOHN FLYNN, DYLAN ROSS, THE
UNITED STATES OF AMERICA,
JODIE LUDEMANN, and MOLLY
SANFORD,[1]

      Defendants.

_____

26-CV-142 (JLS)

## DECISION AND ORDER

*Pro se* Plaintiff Louie Gene Harris filed this action seeking relief under 42

U.S.C. § 1983 in connection with his 2022 arrest and subsequent criminal

proceedings.  Dkt. 1.

_____

[1] The Clerk of Court is directed to update the caption as it appears above.

Harris seeks permission to proceed *in forma pauperis* ("IFP").  Dkt. 2. Because Harris meets the requirements of 28 U.S.C. § 1915(a), he is granted permission to proceed IFP.  The Court therefore screens his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

For the reasons below, Harris's claims against Agent Falcotti in his official capacity, Office of the Attorney General ("AG's Office), Judge Eagan and Judge Givens, and the prosecutorial defendants—Keane, Flynn, Reda, Solek, Caldwell, Roemer, Mohun, and Healy—in their official capacities—are dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii) without leave to amend; his failure to investigate claims and claims premised on N.Y. Penal Law § 496 are dismissed under 28 U.S.C. § 1915(e)(2)(ii) without leave to amend; his Section 1983 claim for fabrication of evidence may proceed to service against Detective Ruffin in her individual capacity; and the remaining claims are dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii), but with leave to amend.

## DISCUSSION

## I.   LEGAL STANDARDS

### A.   Review Under the IFP Statutes

A court shall dismiss a complaint in a civil action with an individual proceeding IFP, if the court determines the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

## B.    Pleading Standards

In evaluating a complaint, the court must "accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor." *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003).  Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a *pro se* complaint must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint states a claim for relief if the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In other words, although a *pro se* complaint need not provide every last detail in support of a claim, it must contain sufficient factual allegations to nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see Komatsu v. Cubesmart, Daniels Norelli Cecere & Tavel PC*, No. 20-3676-CV, 2021 WL 6060603, at *1 (2d Cir. Dec. 20, 2021) (summary order) (to avoid *sua sponte* dismissal under the IFP statute, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face'" (quoting *Twombly*, 550 U.S. at 570)); *Scott Phillip Lewis v.*

3

*R.L. Vallee, Inc., d.b.a. Maplefield's*, No. 24-1438, 2025 WL 1077412, at *1 (2d Cir. Apr. 10, 2025) (summary order) (same).

The Court's liberal pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint fails to state a claim if it supplies only "labels and conclusions," *Twombly*, 550 U.S. at 555, "a formulaic recitation of the elements of a cause of action," *id.*, or "'naked assertions' devoid of 'further factual enhancement[,]'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 557). Although a court is "obligated to draw the most favorable inferences that [a plaintiff]'s complaint supports, [it] cannot invent factual allegations that he [or she] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## C.    Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff "must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

4

To establish liability against an official under Section 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a Section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). There is "no special rule for supervisory liability." *Tangreti v. Bachmann,* 983 F.3d 609, 618 (2d Cir. 2020). Rather, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676).

## D.    Leave to Amend

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, unless it "can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999)). But a court may deny leave to amend pleadings when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend.").

5

## II.    ALLEGATIONS

Harris sues the following defendants: Michael Keane, the Erie County District Attorney ("DA"); Lynette Reda, Bethany Solek, Justin Caldwell, Cathleen Roemer, Meredith Mohun, and Harmony Healy, all employees of the Erie County DA's Office;[2] John Flynn, former Erie County DA; Detective James McMahon, Detective Rita Ruffin, Detective Michael Moore, and Dylan Ross, all presently or formerly employed by the Buffalo Police Department ("BPD"); Timothy Gallagher, a public defender; Robert Fogg, an attorney; Erie County Supreme Court Judges Susan Eagan and Debra Givens; Erin L. Copping, Joelene A. Lamphier, and Maureen Duggan, court reporters or stenographers; New York State Governor Kathy Hochul; Federal Bureau of Investigation ("FBI") Agent Falcotti; the City of Buffalo; Office of the Attorney General (Buffalo) ("AG's Office); and the United States of America.  Dkt. 1 at 2, 6-9.  While not listed separately as defendants, BPD Detective Molly Sanford and forensic biologist Jodie Ludemann are named in the claims as defendants, and so the Court has added them to the caption as defendants.  *Id.* at 12, 16.  A liberal reading of the Complaint[3] tells the following story.

---

[2] Collectively, with DA Keane and former Erie County DA John Flynn, the Court refers to these defendants as "the prosecutorial defendants."

[3] Harris attaches lengthy exhibits to his Complaint, totaling over one hundred fifty pages, including an unsigned "supporting affidavit" as well as a confusing jumble of social media postings, messages, pictures, and links.  Dkt. 1-2 (Exhibit A); Dkt. 1-3 (Exhibit B).  While some portions of the affidavit appear to reiterate Harris's claims from the Complaint, the affidavit also contains numerous additional, and somewhat

On or about September 21, 2022, various defendants, including Keane, assistant Erie County district attorneys ("ADAs"), and BPD detectives, "worked in concert to illegally manipulate narratives to unlawfully establish probable cause and ultimately have [Harris] maliciously indicted, arrested, and prosecuted under the improperly obtained indictment 72776-22 in Erie County Supreme Court." Dkt. 1 at 3-4.

On August 31, 2022, "under the direction of" Keane, ADA Roemer "manipulated and fabricated the Grand Jury proceeding[.]" *Id.* at 17. Copping and

---

fantastical, allegations of conspiracy and retaliatory actions by dozens of individuals and corporations. While a plaintiff may attach exhibits to the Complaint, *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."), Harris's voluminous exhibits are not referenced in the Complaint and do not clearly correspond to the Complaint's allegations to render it integral. The Court therefore has not considered the exhibits in its screening under 28 U.S.C. § 1915(e). *See Davies v. Christopher Community*, No. 5:16-CV-0852 (TJM/DEP), 2016 WL 5947351, at *3 n.4 (N.D.N.Y. Sept. 9, 2016) ("the purpose of Rule 8 is to give notice of the claims asserted to the defendants so they may prepare an adequate defense. Asking defendants (or the court) to scour several dozens of pages of unidentified documents in search of a cognizable cause of action is manifestly unfair." (citation omitted)), *report and recommendation adopted*, 2016 WL 5955898 (N.D.N.Y. Oct. 13, 2016); *Belardo v. Annucci*, No. 9:22-CV-0032 (DNH/ATB), 2022 WL 22889131, at *3 (N.D.N.Y. May 10, 2022) ("It is not the Court's responsibility to scour those exhibits and attempt to manufacture a cause of action from the information contained in those materials."). Harris may include any relevant facts and incorporate any relevant exhibit by reference in any amended complaint. *See Cleveland v. Breslin*, No. 97-CV-0486(TJM)(GJD), 1997 WL 275101, at *2 (N.D.N.Y. May 16, 1997) ("While [the plaintiff] may attach exhibits to his amended complaint, he shall not incorporate them by reference as a means of providing the factual basis for his claims. . . the Court will not independently examine exhibits that [the plaintiff] does not specifically reference (by the exhibit's page number) in his amended complaint.").

Lamphier, who were listed as the stenographers on the transcripts, failed to report the "malfeasance[.]" *Id.* Then on September 8, 2022, under Keane's direction, Roemer "improperly obtained the malicious indictment 72776-22 in Erie County Supreme Court[,]" which was signed by Judge Givens. *Id.* at 21.

On October 14, 2022, Judge Eagan "allowed Timothy Gallagher to agree off the record to starting 'motion time'" without [ADA] Roemer stating she was ready for trial and without Harris being present. *Id.* at 10. Harris "did not waive [his] discovery rights[.]" *Id.*

From about November 15, 2022 until September 28, 2023, Fogg "colluded with the prosecution and the Court for the entirety of the proceedings, filing irrelevant motions and lying to [Harris.]" *Id.* at 11. Harris was forced "to do [his] own research and argue with [Fogg] to get him to file [his] motion to dismiss." *Id.*

On or about November 17, 2022, Judge Eagan gave Harris "an excessive bail/bond amount of $10,000" when Harris had requested, through his attorney, that it be set at $7,000. *Id.* at 15.

On February 7, 2023, BPD Detective McMahon, a supervisor, "failed to sign and supervise the required document submissions" concerning lab reports. *Id.* at 12. Detective McMahon also "forged" BPD Detective Moore's name, and neither Moore nor Ludemann reported the forgery. *Id.*

Ruffin "manipulated witness statements 6 months apart to form false narratives during her investigation." *Id.* at 13. Ruffin then testified on February

8

23, 2023 under oath and "perjured herself while colluding with" Fogg. *Id.* ADA Roemer and Judge Eagan "were present during this collusion[.]" *Id.*

On July 20, 2023, Judge Eagan denied Harris's "meritorious constitutional speedy trial motion" and "neglected to acknowledge and read [his] affidavit which contained allegations regarding the corruption, without a 440 hearing." *Id.* at 14. On that same date, ADA Mohun "colluded" with Fogg and Judge Eagan to deny Harris his constitutional speedy trial rights. *Id.* at 18.

From September 13, 2021 until September 28, 2023, Sanford assisted McMahon "in his unlawful[] investigation when he obtained evidence that was 'Fruit of the Poisonous Tree' in violation of the 'Exclusionary Rule'" and submitted documents constituting a "Fraud upon the Court[.]" *Id.* at 16.

On September 28, 2023, ADA Mohun "reserved the right to appeal (maliciously)" despite "knowing the due process violations [that] happened to" Harris in the DA Office's "[e]fforts to cover up their illegal actions." *Id.* at 19.

On February 19, 2025, ADA Healy began her oral argument "with statements that attempted to guide the court[']s attention away from the fraudulent submissions of the defendants" including McMahon. *Id.* Mohun's and Healy's actions were "done under the direction of Michael Keane[.]" *Id.*

The appellate decision for Harris's case "was held and delayed until approximately 2 weeks after August 6th, 2025, when Governor Kathy Hochul enacted amendments to Article 245 as part of the FY2026 Enacted Budget." *Id.* at

9

20. "These amendments attempted to strengthen the Erie County [DA] Office's position" in Harris's case. *Id.* These "legislative manipulation attempts failed." *Id.*

The City of Buffalo "has recognized its official employees['] participation in retaliatory circumstances" in certain known cases, but the "unconstitutional behavior continues" with Harris now a "victim" of the "City of Buffalo's failure to train and supervise its employees[.]" *Id.* at 22.

Harris allegedly "reported the 14th Amendment violations and federal offenses" committed during his criminal case to the New York AG's Office in Buffalo and New York City, but "their officials did nothing to assist [him] in these matters." *Id.* at 23. Harris also "reported the collusion to Agent Falcotti[,]" but "he showed complete indifference[.]" *Id.* at 24. Harris showed him transcripts and told him that he was being "retaliated against" but "still offered . . . no assistance[.]" *Id.* Harris has been "assaulted and robbed during this retaliation[,] and has "been made homeless and unemployed because of these 14th Amendment violations[.]" *Id.*

In connection with these allegations, Harris alleges claims for due process violations, free speech violations, ineffective assistance of counsel, failure to supervise and train, fraud upon the court, police misconduct and corruption, prosecutorial misconduct, malicious prosecution, fabrication of evidence, perjury, failure to intervene, deliberate indifference, and corruption of the government under N.Y.S. Penal Law § 496. *See generally id.* at 10-24.

For relief, Harris seeks $588,235,294,117,60 in damages for each of his seventeen claims, for a "total sum of $10 trillion[,]" and for the Court to "order the

10

immediate repudiation of all manipulated (court) proceedings[;]" "immediately seek legislative action that prevents and harshly punishes this kind of malfeasance[;]" to "change the name to 'H.H.H. Hearing' and "automatically initiate a civil rights lawsuit in favor of the violated citizen[.]" Dkt. 1 at 4, 5, 10-24.

## III.  ANALYSIS

### A.    Claims Against Federal Defendants

Harris sues the United States of America, as well as FBI Agent Falcotti in his official and individual capacity.  Dkt. 1 at 8-9.  Harris also cites to the Federal Tort Claims Act ("FTCA").  *Id.* at 24.

#### 1. Sovereign Immunity Against the United States

Absent a waiver, "sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  Sovereign immunity "is a jurisdictional bar: '[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.'" *Perez v. Horseracing Integrity & Safety Auth.*, 797 F. Supp. 3d 155, 161 (E.D.N.Y. 2025) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)).

Because an action against federal officers in their official capacities "is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).  As relevant here, the Supreme Court has "unanimously declined an invitation to extend *Bivens* to permit suit against a federal agency" and, so, immunity is not waived for a plaintiff's suit

11

against individual federal defendants in their official capacities. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001).

Thus, Harris's claims against Agent Falcotti in his official capacity are dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii) without prejudice and without leave to amend.

### 2. FTCA Claim

The FTCA provides a limited waiver of the United States's sovereign immunity for "claims against the *United States*, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]" 28 U.S.C. § 1346(b)(1) (emphasis supplied).

There is no indication that Harris has exhausted his administrative remedies as the statute requires. "The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court. This requirement is jurisdictional and cannot be waived." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993); and then citing *Robinson*, 21 F.3d at 510). As the statute states:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and *his claim shall have been finally denied by the agency in writing.* . . . The failure of an agency to make final disposition of a claim within six months after it is filed shall,

12

at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C § 2675(a) (emphasis supplied).  The administrative claim must include "sufficiently specific information as to the basis of the claim, the nature of his injuries, and the amount of damages sought" so that the agency "can reasonably understand what it must probe to determine liability, to value the claim, and to assess the advisability of settlement." *Collins v. United States*, 996 F.3d 102, 119 (2d Cir. 2021) (citation omitted).

Harris has the burden to "both plead and prove compliance with the [exhaustion] requirements" of the FTCA. *In re Agent Orange Prod. Liability Litig.*, 818 F.2d 210, 214 (2d Cir. 1987) (citations omitted).  "Failure to comply with this exhaustion requirement deprives Article III courts of subject matter jurisdiction over FTCA claims." *Leytman v. United States*, 832 F. App'x 720, 722 (2d Cir. 2020) (citing *Celestine*, 403 F.3d at 82).  Where a plaintiff bringing an FTCA claim has not "exhausted his administrative remedies prior to filing" in federal court, "the proper course of action is for the district court to dismiss the claims without prejudice to allow the litigant to institute a separate new action once exhaustion has been completed." *Saleh v. Holder*, 470 F. App'x 43, 44 (2d Cir. 2012).

Harris has not demonstrated that he has complied fully with the FTCA's exhaustion requirements.  As such, any FTCA claim is dismissed, but the Court grants Harris leave to amend to show that he has complied with the FTCA's exhaustion requirements.

### 3. Failure to Investigate Claim Against Agent Falcotti

To the extent Harris seeks to assert a standalone due process claim based on Agent Falcotti's failure to investigate alleged unlawful activity, that claim is not cognizable and fails. *See Westry v. City of Waterbury*, No. 3:22-CV-686 (MPS), 2023 WL 3259878, at *5 (D. Conn. May 4, 2023).

Numerous courts have recognized that a plaintiff "has no 'constitutional right to an investigation of any kind by government officials.'" *Baltas v. Jones*, No. 3:21CV469 (MPS), 2021 WL 6125643, at *14 (D. Conn. Dec. 27, 2021) (quoting *Banks v. Annucci*, 48 F. Supp. 3d 394, 414 (N.D.N.Y. 2014) (citations omitted)); *Miller v. U.S. Postal Inspection Serv.*, No. 1:24-CV-0588 (LTS), 2024 WL 1639827, at *3 (S.D.N.Y. Apr. 15, 2024) ("To the extent that Plaintiff asserts that . . . any individual [federal] official, has violated Plaintiff's federal constitutional rights by failing to investigate the abovementioned individuals whom Plaintiff alleges committed criminal acts against him or by failing to protect him from those individuals, the claims fail because . . . any individual [federal] officials have no such constitutional duty."). Both the Second Circuit and courts within it "have consistently declined to recognize a claim of 'failure to investigate' as a violation of due process giving rise to a damages action." *Grega v. Pettengill*, 123 F. Supp. 3d 517, 536 (D. Vt. 2015) (collecting cases); *see also Hicks v. Marchman*, 719 F. App'x 61, 64 (2d Cir. 2018) (affirming dismissal of fair trial claim where plaintiff "cite[d] no authority for the proposition that there is a stand-alone fair trial claim based on officers' failure to conduct an adequate investigation").

Harris alleges that he reported the "collusion" and other misconduct during his criminal case to FBI Agent Falcotti but received "no assistance[.]" Dkt. 1 at 24. He has not provided any authority suggesting that Agent Falcotti had a constitutional duty to investigate the crimes and misconduct Harris reported. Even liberally construing such allegations, the Court finds that Harris has not alleged a constitutional violation based on Agent Falcotti's or the FBI's failure to investigate the alleged misconduct.[4]

Because amendment would be futile, this claim is dismissed without leave to amend.

**B.    Claims Against State Defendants Immune from Suit**

### 1. Sovereign Immunity and the Eleventh Amendment

Unless a State has "waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham,* 473 U.S. 159, 167 n.14 (1985) (citation omitted). Congress has not abrogated the states' immunity for claims under Section 1983, *see Dube v. State Univ. of N.Y.,* 900 F.2d 587, 594 (2d Cir. 1990), and New

---

[4] Any claim against Agent Falcotti, a federal officer, in his individual capacity would arise, if at all, under *Bivens v. Six Unknown Named Agent of Fed Bureau of Narcotics,* 403 U.S. 388 (1971), rather than under Section 1983. Because Harris has not alleged facts to support a failure to investigate claim, the Court need not analyze whether to extend a *Bivens* remedy in this instance. *See Miller,* 2024 WL 1639827, at *3 (dismissing failure to investigate claim against federal postal inspector for failure to state a claim without conducting a full *Bivens* analysis).

York has not waived its immunity to suit in federal court, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).[5]

Because "a judgment against a public servant in his official capacity imposes liability on the entity that he represents[,]" *Graham*, 473 U.S. at 169 (citation modified), the above "rule of immunity extends to cases where the action is in essence one for the recovery of money from the state, even when individual [state] officials are the nominal defendants," *Williams v. Marinelli*, 987 F.3d 188, 197 (2d Cir. 2021) (citation modified).

Because the AG's Office is a state agency, the Eleventh Amendment analysis is the same whether Harris intended to sue the state itself or the AG's office. *See Johnson v. New York*, No. 18-CV-2817 (RRM) (SMG), 2019 WL 13563241, at *3 (E.D.N.Y. Nov. 20, 2019) (dismissing Section 1983 claims against New York State AG's Office due to New York's sovereign immunity); *Smith v. United States*, 554 F.

---

[5] A limited exception to the Eleventh Amendment's grant of sovereign immunity exists when a plaintiff seeks injunctive relief against a state official for an ongoing violation of federal law or the Constitution. *See Graham*, 473 U.S. at 167 n.14 (citing *Ex parte Young*, 209 U.S. 123 (1908)). The theory is that "such a suit is not 'one against the State,' and therefore[, is] not barred by the Eleventh Amendment." *CSX Transp., Inc. v. New York State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002) (quoting *Ex parte Young*, 209 U.S. at 154)). Under the *Ex parte Young* exception, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff "(1) alleges an ongoing violation of federal law; and (2) seeks relief properly characterized as prospective." *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020). The Court need not address this exception further, as Harris has not alleged facts supporting an ongoing federal law or constitutional violation or sought prospective injunctive relief.

App'x 30, 31 (2d Cir. 2013) (affirming dismissal per sovereign immunity of Section 1983 claims against the New York Attorney General).

As for Judge Eagan and Judge Givens, "judges within the New York State Unified Court System are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacity." *Johnston v. Bauer*, No. 6-23-CV-975 (GTS) (ATB), 2023 WL 9534631, at *2 (N.D.N.Y. Oct. 12, 2023), *report and recommendation adopted*, 2024 WL 456786 (N.D.N.Y. Feb. 6, 2024). "[A]bsent an express waiver of sovereign immunity, or a clear abrogation of that immunity by Congress, the Eleventh Amendment generally bars Plaintiff from suing courts within the New York State Unified Court system, as well as state judicial officers in their official capacities, in federal court for legal and equitable relief." *Gribbin v. New York State Unified Ct. Sys.*, No. 18-CV-6100(PKC)(AKT), 2020 WL 1536324, at *4 (E.D.N.Y. Mar. 31, 2020), *aff'd*, 838 F. App'x 646 (2d Cir. 2021) (summary order). Harris cannot maintain his claims against Judge Eagan and Judge Givens in their official capacities.

Moreover, although Keane and the prosecutorial defendants are employees of the Erie County District Attorney's Office, they appear to have been acting as agents of the state under the circumstances alleged here. "[I]t is well established that New York prosecutors act on behalf of the state, not the county in which they serve, when prosecuting a criminal matter." *See Schnitter v. City of Rochester*, 556 F. App'x 5, 9 n.4 (2d Cir. 2014) (summary order) (citing *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988)); *see also D'Alessandro v. City of New York*, 713 F. App'x 1, 8

17

(2d Cir. 2017) (summary order) ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity."). But the Second Circuit has held that if a suit "centers 'on the administration of the district attorney's office'—that is, on the 'office policy' that the district attorney sets—then the district attorney is 'considered a municipal policymaker,' and the Eleventh Amendment does not immunize [that official] from suit." *D'Alessandro*, 713 F. App'x at 8 (quoting *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993)).

The Eleventh Amendment therefore bars Harris's claims for monetary damages against the New York AG's Office as well as his claims against Judge Eagan, Judge Givens, and the prosecutorial defendants in their official capacities, and the Court dismisses those claims under 28 U.S.C. § 1915(e)(2)(B)(iii) without prejudice and without leave to amend. Because the Court grants Harris leave to file an amended complaint and he will, therefore, have an opportunity to restate his request for relief, the Court will determine the effect of the Eleventh Amendment on any claims for injunctive relief when screening any amended complaint.

### 2. Judicial Immunity

For claims against judges in their individual capacities, judges enjoy absolute immunity unless the judge takes an action outside of his or her judicial capacity or in the complete absence of all jurisdiction. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Judicial immunity "is to ensure 'that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without

18

apprehension of personal consequences to himself.'" *Paulk v. Kearns*, 596 F. Supp. 3d 491, 496 (W.D.N.Y. 2022) (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)). Such immunity is therefore not overcome by "allegations of bad faith or malice," *Mireles*, 502 U.S. at 11, or because the actions were taken "in error" or "in excess of . . . authority," *id.* at 13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)).

The allegations in the Complaint neither allege nor suggest that Judge Eagan or Judge Givens acted outside of their judicial capacities or in the complete absence of all jurisdiction. Indeed, Harris appears to challenge the judges' specific decisions in his case. Harris's claims against Judge Eagan and Judge Givens in their individual capacities are therefore dismissed under 28 U.S.C. § 1915(e)(2)(B)(i), (iii)—on the basis of immunity and as frivolous—without leave to amend. *See Hahn v. New York*, 825 F. App'x 53, 55 (2d Cir. 2020) (summary order) (affirming a dismissal on judicial immunity grounds without granting leave to amend); *Brady v. Ostrager*, 834 F. App'x 616, 619 (2d Cir. 2020) (summary order) ("Given . . . judicial immunity, the district court correctly held that amendment would be futile."); *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of 28 U.S.C. § 1915(g)."); *Tewari v. Sattler*, No. 23-36-CV, 2024 WL 177445, at *2 (2d Cir. Jan. 17, 2024) (summary order) ("[B]ecause it is 'unmistakably clear' based on the allegations in the Complaint that judicial immunity applies in this particular case and that the claims are thus legally frivolous, the district court was not required to provide [plaintiff] with notice and an opportunity to be heard prior to

the dismissal." (quoting *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82 (2d Cir. 2018))).

### 3. Prosecutorial Immunity

Prosecutors performing traditional prosecutorial activities are accorded absolute immunity from Section 1983 suits. *See Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976). This immunity "encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation," including decisions regarding when or if to prosecute a case. *Barrett v. United States*, 798 F.2d 565, 571-72 (2d Cir. 1986). Such functions include "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial[.]" *Kendrick v. Troche*, No. 18-CV-6932 (CJS), 2019 WL 4072754, at *5 (W.D.N.Y. Aug. 29, 2019) (citation modified).

Absolute immunity extends to a prosecutor's "acts undertaken in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) (summary order) (citation modified) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). But "a prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Id.* (citation modified); *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995). The Supreme Court has identified "evaluating evidence and

20

interviewing witnesses as falling on the absolute immunity side of the line, leaving 'searching for the clues and corroboration' that might lead to a recommendation for an arrest on the qualified immunity side." *Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012) (citation modified). For example, those investigative acts not entitled to absolute immunity include "those undertaken in the phase of law enforcement that involves the gathering and piecing together of evidence for indications of criminal activities and determination of the perpetrators." *Id.* (citation modified).

Harris's specific allegations against the prosecutorial defendants involve actions taken within the scope of their duties in initiating and conducting judicial proceedings or for trial, and otherwise occur in the course of their roles as advocates. For example, ADA Mohun "reserved the right to appeal (maliciously) . . . knowing the due process violations" that occurred in Harris's proceedings. Dkt. 1 at 19. ADA Healy "began her oral argument on February 19, 2025 with statements that attempted to guide the court[']s attention away from the fraudulent submissions of the defendants." *Id.* Such actions fall squarely within the role of an advocate in Harris's criminal proceedings.

Harris further alleges Roemer "improperly obtained the malicious indictment" and "manipulated and fabricated the grand jury proceeding on August 31, 2022. Dkt. 1 at 17, 21. But the Supreme Court has held that "immunity extended to a prosecutor's conduct before a grand jury"[,] *Burns v. Reed*, 500 U.S. 478, 490 (1991) (citing *Yaselli v. Goff*, 275 U.S. 503 (1927)), and the Second Circuit has held that "[a] prosecutor is also entitled to absolute immunity despite

21

allegations of his 'knowing use of perjured testimony' and the 'deliberate withholding of exculpatory information.'" *Shmueli*, 424 F.3d at 237 (quoting *Imbler*, 424 U.S. at 431 n.34).

Besides the conclusory allegation about Roemer's role in the indictment, Harris's broader allegations that these defendants perpetuated false narratives or colluded to violate his rights cannot overcome this immunity. Accordingly, the claims against the prosecutorial defendants are dismissed, but with leave to amend to allege any constitutional violations stemming from the prosecutorial defendants' investigative or administrative actions.

Harris also alleges a failure to supervise or train claim against Keane and former DA John Flynn. In *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009), the Supreme Court held that "supervisory prosecutors are immune in a suit directly attacking their actions related to an individual trial." 555 U.S. at 346; *see also Rindgen v. County of Broome*, No. 3:24-CV-1325 (AJB/ML), 2025 WL 2772080, at *12 (N.D.N.Y. Sept. 29, 2025) ("[P]rosecutors are absolutely immune for failing to train or supervise their subordinates as to their prosecutorial duties and obligations."). Insofar as Harris alleges Keane's supervision was directly connected with the advocacy functions of the prosecutors in his case, it is barred by absolute immunity. *See Van de Kamp*, 555 U.S. at 346; *see also Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 205 (S.D.N.Y. 2004) ("To the extent the supervision or policies concern the prosecutorial decisions for which the ADAs have absolute immunity, then those derivative allegations against supervisors must also be dismissed on the

ground that the supervising district attorneys have absolute immunity for the prosecution-related decisions of their subordinates . . . ."). As to Flynn, Harris does not name Flynn in connection with any specific claim nor does he allege facts regarding Flynn's personal involvement in any alleged constitutional violation, let alone a failure to train or supervise attorneys in Harris's case.

The claims against the prosecutorial defendants—Keane, Reda, Solek, Caldwell, Roemer, Mohun, Healy, and Flynn—in their individual capacities are dismissed, with leave to amend.

### C.    *Monell* and Failure to Train or Supervise

#### 1. *Monell* Claims

Harris names the City of Buffalo as a Defendant, and the Court further construes Harris's Complaint to assert claims against the individual defendants employed by the City of Buffalo, including BPD officers and detectives, in their official capacities. *See Reynolds-El v. Strackbein*, No. CV 3:25-CV-00951 (KAD), 2025 WL 3470483, at *4 (D. Conn. Dec. 3, 2025) ("[The Court] will read [the plaintiff's] *pro se* complaint liberally and presume that he intended to name the defendants in both their individual and official capacities, to the extent applicable.").

To the extent that Harris sues BPD Detectives McMahon, Ruffin, and Moore, as well as former BPD Officer Dylan Ross, in their official capacities, Harris's claims are equivalent to claims against the City of Buffalo. *Graham*, 473 U.S. at 166; *Baines v. Masiello*, 288 F. Supp. 2d 376, 384 (W.D.N.Y. 2003). Harris's official

23

capacity claims against the individual defendants who are BPD employees are therefore considered to be redundant of his claims against the City of Buffalo and accordingly will be dismissed. *See Beckwith v. Erie Cnty. Water Auth.*, 413 F. Supp. 2d 214, 224-25 (W.D.N.Y. 2005) ("A claim against a government official in his official capacity is merely another way of asserting a claim against the governmental entity that employs the official.").

A municipality cannot be held liable under Section 1983 unless the challenged action was undertaken pursuant to a municipal policy or custom. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). To state such a claim, a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

> An official policy or custom can be established by showing:
>
> (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.

*Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 453 (E.D.N.Y. 2021) (citing cases).

24

Harris does not contend that any of the alleged constitutional deprivations were caused by or occurred pursuant to an official custom or policy of the City of Buffalo and thus Harris has failed to state a Section 1983 claim against this defendant. Because Harris is *pro se*, he is granted leave to amend this claim to allege, if facts exist, that the constitutional violations alleged were caused by a policy or custom of the City of Buffalo.

### 2. Failure to Train or Supervise Claims

Harris alleges that the City of Buffalo is liable because it failed to train or supervise its employees. Where municipal liability is premised on a failure to train or supervise, the Supreme Court has held that "the inadequacy of police training may serve as the basis for [Section] 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1992). Only where a municipality's failure to train its employees in a relevant respect "evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under [Section] 1983." *Id.* at 389; *see also Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (noting that a deliberate indifference showing is required for both failure-to-train and failure-to-supervise claims) (citing *Harris*, 489 U.S. at 390 (1989))). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

25

To plausibly state a claim for municipal liability based on a failure to train or supervise theory, a plaintiff must allege:

> (1) that the municipal policymakers know "to a moral certainty" that their employees will face a given situation; (2) that the situation either presents employees with a difficult choice that would be aided by training or supervision or that "there is a history of employees mishandling the situation"; and (3) the wrong choice or response from the employees "will frequently cause the deprivation of a citizen's constitutional rights."

*Michel v. Orange County, N.Y.*, No. 22-190-PR, 2024 WL 461693, at *2 (2d Cir. Feb. 7, 2024) (summary order) (quoting *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007)).

Harris has not alleged sufficient facts to support a deliberate indifference showing as to the City of Buffalo's failure to train or supervise its employees. In particular, he does not allege a particular pattern of due process or other violations that would put the relevant policymakers on notice of this wrong. *See D'Alessandro*, 713 F. App'x at 10 (2d Cir. 2017) (summary order) (affirming dismissal of a failure to train claim where the "complaint [did] not sufficiently allege a pattern of similar constitutional violations" and "merely insist[ed]—over and over again, in a conclusory fashion—that a pattern or custom of misconduct existed"). The only "pattern" alleged is the fact that the City "has recognized its official employees['] participation in retaliatory circumstances" in certain publicized cases—yet Harris does not describe how BPD officers or other city employees have retaliated against him similarly.

This claim is dismissed—with leave to amend to plausibly allege deliberate indifference based on a failure to train or supervise.

**D.    Nonstate Actors**

Because the United States Constitution regulates only the Government, not private parties, "a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)). Private parties or entities may be deemed to act under color of state law for Section 1983 purposes if:

> (1) the State compelled the conduct [the "compulsion test"], (2) there is a sufficiently close nexus between the State and the private conduct [the "joint action test" or "close nexus test"], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the state [the "public function test"].

*Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 112-13 (N.D.N.Y. 2023) (alterations in original) (quoting *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009)); *accord Gerding v. Ljungren*, No. 23-1119, 2025 WL 3751728, at *1 (2d Cir. Dec. 29, 2025). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant*, 691 F.3d at 207 (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

A defense attorney or "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *accord Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) (court-appointed attorneys

27

do not act under color of state law).  Therefore, "[a]bsent special circumstances. . . a private attorney's legal representation of a private person does not constitute state action for the purpose of stating a claim under Section 1983 against that attorney, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender[.]" *Schoch v. Scattaretico-Naber*, No. 7:24-CV-2294 (CS), 2024 WL 2221383, at *4 (S.D.N.Y. May 16, 2024) (citing, *inter alia*, *Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004)).

A public defender or private defense lawyer acts under color of state law if he or she conspires with a state official to deprive a criminal defendant of his constitutional rights.  *See Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) ("Private persons, jointly engaged with state officials in the challenged action, are acting . . . 'under color' of law for purposes of [Section] 1983 actions."); *see also McCloud v. Jackson*, 4 F. App'x 7, 9-10 (2d Cir. 2001) (privately retained counsel could not be held liable under Section 1983 "because there was no showing that he worked with state officials to deprive [the plaintiff] of federal rights").  "Otherwise, it is clear that a [S]ection 1983 action 'is not the appropriate vehicle to raise a claim of ineffective assistance of counsel.'" *Khalil v. Gen. Elec. Corp.*, No. 5:22-CV-312 (GTS/ATB), 2023 WL 11921904, at *12 (N.D.N.Y. Dec. 1, 2023) (quoting *Murphy v. Feliciano*, No. 3:17-CV-269, 2017 WL 3699353, at *7 (D. Conn. May 31, 2017)), *report and recommendation adopted sub nom. Khalil v. Gen. Elec. Corp.*, 2024 WL 3963699 (N.D.N.Y. Aug. 28, 2024).

Harris alleges that Gallagher, a public defender, and Fogg, his attorney, colluded with state actors to violate his rights during his criminal proceedings and also provided ineffective assistance of counsel. Dkt. 1 at 10-11, 13, 18. Harris's allegations of conspiracy and collusion are far too conclusory to show that either attorney's conduct was fairly attributable to the state. As for the ineffective assistance of counsel allegations, the Complaint describes acts that, even if performed deficiently, fall within the traditional functions of trial counsel and, therefore, these actions are without remedy under Section 1983. *See Schlosser v. Kwak*, No. 3:20-CV-393 (SRU), 2020 WL 4003502, at *5 (D. Conn. July 15, 2020) ("Because the claims against the public defender[ ] appear to arise from [his] 'grossly ineffective' representation . . . , [plaintiff] is challenging actions that [the public defender] took while performing his traditional functions as counsel. There is thus no basis for the section 1983 claims against him or any other officials in the Office of the Public Defender."), *aff'd*, 16 F.4th 1078 (2d Cir. 2021); *see also Conley v. Alexander*, No. 3:18-cv-294 (VAB), 2020 WL 1514834, at *1, *3 (D. Conn. Mar. 30, 2020) (determining that plea negotiations and other conduct in preparation for trial fall within the traditional functions of a public defender even though the plaintiff alleged that counsel forced him to plead guilty).

Harris's allegations do not provide factual support to show that either attorney acted under color of state law to sustain a Section 1983 claim. The claims against Gallagher and Fogg are dismissed for failure to state a claim, but with leave to amend to allege they were acting under color of state law.

### E.    Fourth Amendment Claims

#### 1. False Arrest

Courts "should generally look to the law of the state in which the arrest occurred to determine the elements of a § 1983 claim for false arrest." *Alberty v. Hunter*, 144 F.4th 408, 414-15 (2d Cir. 2025) (citation modified).  To establish a false arrest claim under New York law, "a plaintiff must adequately allege (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Carruthers v. Colton*, 153 F.4th 169, 179 (2d Cir. 2025) (citation modified).  "[P]robable cause to arrest the plaintiff for *any* crime is a complete defense, 'whether or not that particular crime was closely related to the offense the officers said was the reason for arrest.'" *Peterkin v. Carr*, No. 24-1148-CV, 2025 WL 3181863, at *1 (2d Cir. Nov. 14, 2025) (quoting *Kee v. City of New York*, 12 F.4th 150, 158-59 (2d Cir. 2021)).

Probable cause exists when a law enforcement officer "has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (quoting *Williams v. Town of Greenburgh*, 535 F.3d 71, 79 (2d Cir. 2008)).  And "[m]ore specifically, probable cause exists if a law enforcement officer received information from some person, normally the putative victim or

30

eyewitness, unless the circumstances raise doubt as to the person's veracity." *Id.* (citation modified).

Harris's sparse allegations do not allege a plausible false arrest claim. He alleges a conspiracy to "unlawfully establish probable cause," but does not include any facts concerning his conduct or the circumstances leading to his arrest. Dkt. 1 at 4. He also fails to allege who arrested him or any specific action that the eight defendants named in this count took in connection with his arrest. He has therefore failed to allege any defendant's personal involvement.

The false arrest claim is dismissed, but with leave to amend plead, if possible, allegations supporting a false arrest claim against a non-immune defendant.

### 2. Malicious Prosecution

To state a malicious prosecution claim under Section 1983, a plaintiff must allege "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding," "(4) actual malice[,]" and "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Alexander v. City of Syracuse*, 132 F.4th 129, 158 (2d Cir. 2025) (citation modified). "[U]nlike Fourth Amendment claims of false arrest, in the Fourth Amendment malicious prosecution context, probable cause must support *each* charge brought by the prosecution." *Id.* (citing *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562 (2024)).

At this initial review stage, the Court finds that Harris has not plausibly alleged the elements of a malicious prosecution claim. The Complaint itself does not explain the outcome of Harris's criminal case or charges—that is, a favorable termination.

More crucially, Harris's conclusory allegations that he was "maliciously prosecuted" without legitimate probable cause are insufficient to plausibly state a malicious prosecution claim. As with Harris's false arrest claim, there are no facts suggesting a lack of probable cause. Indeed, because Harris by his own admission was indicted by a grand jury, there is "presumption of probable cause" that may "only be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Thompson v. Kline*, 504 F. Supp. 3d 200, 213 (W.D.N.Y. 2020) (first quoting *Rothstein v. Carriere*, 373 F.3d 275, 282-83 (2d Cir. 2004); and then quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). But without more, Harris's conclusory allegations that the indictment was "fabricated" and that he was maliciously prosecuted do not suffice.

Harris's malicious prosecution claim is dismissed, but with leave to amend to plead, if possible, allegations supporting a malicious prosecution claim against a non-immune defendant.

### F.    Due Process Claims

The Due Process Clause "'guarantees a criminal defendant's right to a fair trial,' and it may be vindicated 'in an action for damages under 42 U.S.C. § 1983.'"

32

*Galloway v. County of Nassau*, 141 F.4th 417, 423 (2d Cir. 2025) (quoting *Frost v. New York City Police Dep't*, 980 F.3d 231, 244 (2d Cir. 2020)). A plaintiff "need not have gone to a full trial on the merits in order to have an actionable Section 1983 claim based on the denial of a fair trial." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 626 (E.D.N.Y. 2017) (citing, *inter alia*, *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 127, 129 (2d Cir. 1997) (plaintiffs who brought a Section 1983 claim for right to a fair trial had their criminal charges dismissed pretrial)); *see also Manigault v. City of New York*, No. 11 CIV. 4307 (AJN), 2012 WL 13049173, at *6 (S.D.N.Y. Apr. 19, 2012) ("[T]here are a number of cases in this Circuit where a plaintiff proceeded with his fair trial claim despite never having been tried.") (citing cases).

### 1. Fabricated Evidence

To state a Section 1983 fair trial claim based on fabricated evidence, a plaintiff must establish that "an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result." *Carruthers*, 153 F.4th at 189 (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)).

Conclusory statements that officers fabricated evidence "do not suffice to state a claim for the denial of a fair trial." *Hutchins v. Solomon*, No. 16-CV-10029 (KMK), 2018 WL 4757970, at *16 (S.D.N.Y. Sept. 29, 2018). "[T]he Second Circuit equates 'the fraudulent omission of factual information . . . with the affirmative

33

perpetration of a falsehood,' and expressly disclaims any 'plausible legal distinction between misstatements and omissions.'" *Id.* at *17 (quoting *Morse v. Fusto*, 804 F.3d 538, 550 (2d Cir. 2015)).

Throughout the Complaint, Harris generally alludes to the Fourteenth Amendment and his due process rights being violated. Concerning many of these conclusory allegations, Harris has not identified what evidence—such as a witness statement, police report, accusatory document, etc.—was specifically fabricated, or that any police officer defendant knew or should have known that information or evidence sent to the prosecutors was false. *See, e.g.*, *Longo v. Ortiz*, No. 15-CV-7716, 2016 WL 5376212, at *6 (S.D.N.Y. Sept. 26, 2016) (finding that the allegations failed to "state with the requisite specificity the evidence that was purportedly fabricated"). To the extent they are asserted against non-immune defendants, Harris's generalized allegations of evidence fabrication do not plausibly state a due process claim, and those claims are dismissed with leave to amend.

However, Harris describes two particular incidents requiring further discussion. First, Harris alleges that on February 7, 2023, Detective McMahon, a supervisor, "failed to sign and supervise the required document submissions" concerning a lab report and also "forged" Detective Moore's name. Dkt. 1 at 12. While McMahon's actions could constitute a due process violation, Harris does not explain the importance of failing to sign this lab report or on which document McMahon forged Detective Moore's signature, let alone the significance of that document. Without further information, Harris has not alleged that the

34

fabrications here concerned information forwarded to prosecutors that was likely to influence a jury's verdict or otherwise significant to his case. The due process claim against McMahon is dismissed, but with leave to amend.

Second, Harris alleges that Ruffin "manipulated witness statements six months apart to form false narratives during her investigation" and later perjured herself on February 23, 2023 while testifying under oath. *Id.* at 13. At this stage, based on a liberal reading of the Complaint, this claim against Ruffin in her individual capacity may proceed to service.[6]

### 2. Failure to Investigate

As discussed above, both the Second Circuit and courts within it "have consistently declined to recognize a claim of 'failure to investigate' as a violation of due process giving rise to a damages action." *Grega*, 123 F. Supp. 3d at 536 (collecting cases); *see also Hicks*, 719 F. App'x at 64 (affirming dismissal of fair trial claim where plaintiff "cite[d] no authority for the proposition that there is a stand-

---

[6] Because none of Harris's allegations concerns exculpatory evidence that was withheld, the Court does not read the Complaint to assert a *Brady* violation claim. "A classic *Brady* violation contains three elements: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Ying Li*, 246 F. Supp. 3d at 627 (quoting *Fappiano v. City of New York*, 640 F. App'x 115, 118 (2d Cir. 2016) (summary order)). "To establish prejudice, a plaintiff must show the evidence was material; i.e., whether the 'evidentiary suppression undermines confidence in the outcomes of the trial.'" *Id.*

alone fair trial claim based on officers' failure to conduct an adequate investigation").

Harris's claim that the NY AG's Office failed to investigate the "collusion" and other misconduct during his criminal case is subject to dismissal for the same reasons as the claims against Agent Falcotti.

Because amendment would be futile, this claim is dismissed without leave to amend.

G.    **Conspiracy Claims**

A Section 1983 conspiracy claim requires facts showing "(1) an agreement between a state actor and a private party (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act furthering that goal and causing damages." *Corsini v. Brodsky*, 731 F. App'x 15, 19 (2d Cir. 2018) (summary order) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002)).

Whether asserted under section 1983 or section 1985, conspiracy allegations "must provide some factual basis supporting a meeting of the minds[.]" *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)).  Thus, a plaintiff "must make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Ivery v. Baldauf*, 284 F. Supp. 3d 426, 439 (W.D.N.Y. 2018) (citation modified).  "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a

36

conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello*, 292 F.3d at 325 (citation omitted).

Harris makes general allegations of conspiracy, including that various Defendants "colluded" and "worked in concert to initiate and continue [his] malicious prosecution" and "unlawfully establish probable cause[.]" Dkt. 1 at 4. But Harris fails to provide specific facts to show that Defendants engaged in a conspiracy to deprive him of his constitutional rights or that there was a "meeting of the minds[.]" Harris's conclusory allegations are insufficient, *see Ciambriello*, 292 F.3d at 325, and the claims are dismissed but with leave to amend.

## H.    Remaining Claims

### 1.  Claims Against the Court Reporters

Regarding Copping and Lamphier, Harris alleges only that they "were listed as stenographers on the grand jury transcripts and neither reported the malfeasance"—that is, ADA Roemer's manipulation and fabrication during the grand jury proceeding on August 31, 2022. Dkt. 1 at 17. Harris names Duggan, another court reporter, as a Defendant but does not list her in connection with any specific claims. Nevertheless, the Court reads the Complaint to assert similar claims against Duggan.

Even accepting that the court reporters named here are state actors and have some duty to report misconduct they witness in court, because the Court has determined that Harris's conclusory allegations of fabrication and due process

37

violations fail to state a claim, it is not clear what specific misconduct the court reporters ought to have reported. *Cf. Griggs v. Crim. Ct. of City of New York*, No. 21-CV-1899 (LTS), 2021 WL 1535056, at *3-4 (S.D.N.Y. Apr. 19, 2021) (allegations that court reporters "participated in" and "witnessed" the "charade proceedings" were insufficient to show a violation of clearly established constitutional rights for qualified immunity purposes). Harris fails to provide any authority for a court reporter's duty to report supposed constitutional violations in court or facts to suggest that Copping, Lamphier, and Duggan failed to do so here. The claims against Copping, Lamphier, and Duggan are dismissed but with leave to amend.

### 2. "Legislative Manipulation" and "Corruption" Claims

Harris's thirteenth claim alleges that on August 6, 2025, Governor Hochul and DA Keane were involved in "legislative manipulation attempts" that failed. Dkt. 1 at 20. Specifically, Harris alleges that the appellate decision for his case "was held and delayed until approximately 2 weeks after August 6th 2025, when . . . Hochul enacted amendments to Article 245[7] as part of the FY2026 Enacted Budget." *Id.* These amendments "attempted to strengthen the [DA Office's] position" in his case. *Id.* In connection with this claim, Harris cites to N.Y.

---

[7] Harris is likely referring to N.Y Crim. Proc. Law § 245, which generally governs discovery in criminal cases. *See, e,g., Nazer v. Warden at Rikers Island*, No. 24-CV-5226 (LTS), 2024 WL 4109081, at *1 n.2 (S.D.N.Y. Aug. 26, 2024) ("Article 245 of the CPL provides for mandatory disclosure by the prosecution of information relating to the case that are in the prosecution's possession or control."). Harris does not provide any facts about discovery in his criminal case.

Penal L. § 496, providing for criminal charges for corrupting the government or public corruption. *Id.*

Based on these allegations, it is not clear to the Court how Governor Hochul's actions regarding the budget affected Harris's criminal proceedings or how she was otherwise personally involved in violating his constitutional rights.

Moreover, to the extent Harris seeks to hold Hochul or Keane accountable under N.Y. Penal Law § 496, "there is no private right of action to enforce either state or federal criminal statutes, unless the statute specifically authorizes it." *Petty v. Bono*, No. 6:22-CV-00620(MAD)(ML), 2022 WL 17663484, at *2 (N.D.N.Y. Dec. 14, 2022) (dismissing claims pursuant to criminal statutes, including N.Y. Penal L. § 496.05). "Courts within this Circuit have accordingly held consistently that criminal charges under New York law 'cannot be prosecuted by a private person.'" *Patterson v. Patterson*, 16-CV-0844, 2019 WL 1284346, at *7 (W.D.N.Y. Mar. 20, 2019) (quoting *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 91 (W.D.N.Y. 2009)). Harris has not set forth any authority to support his claim that a private right of action to enforce rights created by N.Y. Penal Law § 496 exists.

These claims are dismissed, but with leave to amend to allege, if possible, Keane or Hochul's personal involvement in a constitutional violation.

## CONCLUSION

Because Harris has met the statutory requirements of 28 U.S.C. § 1915(a) and filed the authorization, his request to proceed *in forma pauperis* is granted.

For the reasons above, Harris's claims against Agent Falcotti in his official capacity, AG's Office, Judge Eagan and Judge Givens, and the prosecutorial defendants—Keane, Flynn, Reda, Solek, Caldwell, Roemer, Mohun, and Healy—in their official capacities, are dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii) without leave to amend; his failure to investigate claims and claims premised on N.Y. Penal Law § 496 are dismissed under 28 U.S.C. § 1915(e)(2)(ii) without leave to amend; his Section 1983 claim for fabrication of evidence may proceed to service against Detective Ruffin in her individual capacity; and the remaining claims are dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii), but with leave to amend.

Harris may file an amended complaint by **August 28, 2026,** in which he includes the necessary allegations as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Harris is advised that an amended complaint **completely replaces** the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Therefore, any amended complaint must include all allegations against each Defendant so that the amended complaint stands alone as the only complaint in this action.

Harris is further advised that he has been granted leave to amend only those claims addressed above. A district court has the inherent authority to dismiss claims that exceed the scope of the court's order granting leave to amend. *See Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order) (collecting cases).

40

## ORDER

IT HEREBY IS ORDERED that Harris's motion to proceed IFP (Dkt. 2) is GRANTED; and it is further

ORDERED that the Clerk of Court is directed to amend the caption to add Jodie Ludemann and Molly Sanford as Defendants; and it is further

ORDERED that Harris's claims Agent Falcotti in his official capacity, AG's Office, Judge Eagan and Judge Givens, and the prosecutorial defendants—Keane, Flynn, Reda, Solek, Caldwell, Roemer, Mohun, and Healy—in their official capacities—are DISMISSED under 28 U.S.C. § 1915(e)(2)(B)(iii) without prejudice and without leave to amend; and it is further

ORDERED that his failure to investigate claims and claims premised on N.Y. Penal Law § 496 are DISMISSED under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim without leave to amend; and it is further

ORDERED his Section 1983 claim for fabrication of evidence may proceed to service against Detective Ruffin in her individual capacity; and it is further

ORDERED that the remaining claims are dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii), but with leave to amend; and it is

ORDERED that Harris may file an amended complaint as directed above by no later than **August 28, 2026**; and it is further

ORDERED that the Clerk of Court shall send to Harris with this order a copy of the original Complaint, a blank Section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

41

ORDERED that if Harris does not file an amended complaint by the deadline set forth above, the Clerk of Court shall cause the United States Marshals Service to serve copies of the Summons, the Complaint, and this order upon Defendant Ruffin, without Harris's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Harris's favor;[8] and it is further

ORDERED that pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (per curiam) the City of Buffalo Corporation Counsel is requested to ascertain the correct spelling and last known service address of Detective Rita Ruffin within 30 days of the date of this Order. The City of Buffalo Corporation Counsel need not undertake to defend or indemnify this individual at this time. Rather, this Order merely provides a means by which Harris may name and properly serve this defendant, as instructed by the Second Circuit in *Valentin*.

The City of Buffalo Corporation Counsel shall produce the information specified above by mail (Pro Se Litigation Unit, United States District Court, Robert H. Jackson United States Courthouse, 2 Niagara Square, Buffalo, New York 14202) within 30 days of the date of this Decision and Order; and it is further

ORDERED that the Clerk of Court shall forward a copy of this decision and order and the Complaint by mail to Rosa Alina Pizzi, Buffalo Corporation Counsel, 65 Niagara, Room 1100, Buffalo, New York, 14202; and it is further

---

[8] If Harris files an amended complaint as directed in this decision and order, service will be deferred until such time as the Court has screened the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

42

ORDERED that, upon service, pursuant to 42 U.S.C. § 1997e(g)(2), Ruffin shall answer or respond to the remaining claim of the Complaint; and it is further

ORDERED that pursuant to Western District of New York Local Rule of Civil Procedure 5.2(d), Harris must immediately notify the Court in writing each time his address changes.  Failure to do so may result in dismissal of the action with prejudice.

SO ORDERED.

Dated:      July 14, 2026
            Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE